INDEX OF EXHIBITS TO NOTICE OF REMOVAL

*Consumer Protection Corporation v.  Neo-Tech News, etc., et al.*

CIV 08-1983 PHX

1.  Class Action Complaint for Injunctive Relief and For Damages Arising Out of Transmissions of Unsolicited Faxes - 47 U.S.C. §227 and for Declaratory Judgment; and for Civil Conspiracy; and for Aiding and Abetting

2.  Certificate of Compulsory Arbitration

3.  Summons to Joyon Entertainment, Inc.

4.  Summons to Joytoto USA, Inc.

**EXHIBIT 1**

1   Peter Strojnik, Esq. 6464
    THE LAW FIRM OF PETER STROJNIK
2   3030 North Central Avenue, Suite 1401
    Phoenix, Arizona 85012
3   Telephone: 602-524-6602
    Facsimile: 602-296-0135
4   e-mail: *Strojnik@aol.com*
5   Website: Strojnik.com
    Attorney for Plaintiff
6



COPY

SEP 2 5 2008



MICHAEL K. JEANES, CLERK
M. BOND
DEPUTY CLERK

7
8           **IN THE SUPERIOR COURT IN THE STATE OF ARIZONA**

9           **IN AND FOR THE COUNTY OF MARICOPA**

10  CONSUMER PROTECTION          ) NO.    CV2008-023603
    CORPORATION, an Arizona      )
11  Corporation,                 )        **CLASS ACTION COMPLAINT FOR**
                                 )        **INJUNCTIVE RELIEF AND FOR**
12                   Plaintiff,  )        **DAMAGES ARISING OUT OF**
                                 )        **TRANSMISSION OF UNSOLICITED**
13                               )        **FAXES - 47 U.S.C. § 227 AND**
14       vs.                     )
                                 )        **FOR DECLARATORY JUDGMENT; AND**
15  NEO-TECH NEWS, a fictitiously named )
    defendant whose true legal identity is not )
16  known by Plaintiff; JOYTOTO USA, )        **FOR CIVIL CONSPIRACY; AND**
    INC., a Nevada Corporation; JOYON )
17  ENTERTAINMENT, INC., a Delaware )        **FOR AIDING AND ABETTING**
    Corporation; ABC DEFENDANTS 1-50, )
18                               )        **REQUEST FOR TRIAL BY JURY**
19                   Defendants. )
    _____ )

20

21       Plaintiff alleges, on Plaintiff's behalf and on behalf of a class of persons defined below,

22  as follows:

23          **THE PARTIES, JURISDICTION AND VENUE**

24  1) Plaintiff CONSUMER PROTECTION CORPORATION is an Arizona Professional

25  Corporation authorized to and conducting business in Maricopa County, State of Arizona.

-1-

2) Defendant NEO-TECH NEWS ("Neo-Tech") is a fictitious entity whose name appears on the unsolicited faxes, Exhibits 1, (Exhibit 1 Fax or Unsolicited Fax) manipulating the publicly traded stocks of Defendant Joytoto USA, Inc.

3) Defendant JOYTOTO USA, INC. ("Joytoto") is a Nevada corporation authorized to and conducting business in the State of Nevada and conducting business across the United States of America including the State of Arizona.  Its stock trades publicly in the over the counter securities market in the United States under the symbol OTC BB: JYTO ("JYTO"). Joytoto is in the business of digital and video game production and distribution, as stated on its website www.joytotousa.com:

> **Joytoto USA, Inc., is a digital, multi-media consumer products developer, online video game developer and distributor, and virtual OEM (original equipment manufacturer) of digital media consumer entertainment devices. The company is a majority owned subsidiary of Joytoto Co., Ltd. ("Joytoto Korea"), a Korean public company traded on the KOSDAQ.**

4) Defendant JOYON ENTERTAINMENT, INC. ("Joyon") is a Delaware Corporation authorized to and conducting business in the State of Delaware and conducting business across the United States of America including the State of Arizona.

5) ABC DEFENDANTS 1-50 are the persons and/or entities who broadcasted the unsolicited facsimile advertisements at issue and/or conspired with and aided and abetted the named defendants to illegally manipulate JYTO stock by issuing unsolicited faxes to Plaintiff and the members of the Class.

6) This Court has personal jurisdiction over Defendants by virtue of the following facts:

a) Defendants caused at least one unsolicited fax to be sent to at least one recipient in the State of Arizona; and

b) The State of Arizona has interest in providing a forum for its residents, including the Plaintiff and the Class identified herein; and

c) It would be extremely burdensome for Plaintiff to access another forum; and

d) Upon information and belief, Defendants continuously and systematically sent unsolicited faxes to the State of Arizona; and

e) Defendants purposefully availed themselves of economic benefits and resources of the State of Arizona in conducting their business here; and

f) Defendants may be hailed in court here under the liberal "effects" test in this tort action; and

g) Defendants did and should have foreseen being hailed to Court in the State of Arizona.

7) This Court has original jurisdiction over this matter by virtue of the TCPA.

8) The venue is proper in this Court.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

9) Plaintiff realleges all allegations heretofore set forth.

10) Joytoto was initially incorporated in the State of Nevada on November 2, 2001 as Web Views Corporation ("Web Views"). It is unknown in what type of business Web Views was involved.

11) On June 17, 2003, Joytoto changed its name from Web Views to Cascade Mountain Mining Company, Inc. Web Views had acquired 100% of the issued and outstanding shares of Cascade Mountain Mining Company and thereafter changed its name to such ("Cascade").

-3-

Cascade was in the business of the development of uranium mines. The President and CEO of Cascade was Wayne Barrington Daley.

12) Again, 1 year and ½ later, on January 7, 2005, Joytoto changed its name from Cascade to National Parking Systems, Inc. ("National Parking"). Cascade had acquired 100% of the issued and outstanding shares of ABS Holding, Inc., a Nevada Corporation, and BH Holding, Inc., a Nevada Corporation, and thereafter changed its name to National Parking. National Parking was in the business of parking and valet services.

13) Again, only 10 months later, on November 18, 2005, Joytoto changed its name from National Parking to Bio Stem, Inc. Bio Stem, Inc. was a purported stem cell company.

14) Again, 2 years later, on October 31, 2007, Joytoto changed its name from Bio Stem to Joytoto USA, Inc. This name change followed a stock exchange agreement by and between Joytoto, Ltd., a Korean Company and Joyon Entertainment Company, Ltd, a Korean Company.

15) Throughout its existence, Joytoto has been in the business of stem cell research, parking and valet services, uranium mining, and online gaming. These wide-ranging areas of business have taken place over a 7-year span.

16) Joytoto has an accumulated deficit of $64,461,459.00 as of June 30, 2008 as admitted by Joytoto in their most recent Form 10Q.

17) Between January 1, 2008 and June 30, 2008, Joytoto has had a net loss of $13,550,286.00.

18) Joytoto has admitted that there is substantial doubt that it can continue operations.

19) Defendants broadcasted the Exhibit 1 Fax to named Plaintiff and the members of the Class on or about August 5, 2008 in violation of the TCPA. The Exhibit 1 Fax states on its face

-4-

that Neo-Tech was paid the sum of $20,000.00 for the broadcasting of the Exhibit 1 Fax.
Upon information and belief, the cost for each fax to be sent is between 1 and 5 cents. This
means that Defendants broadcasted between 400,000 and 2 million copies of the Exhibit 1
Fax. Pursuant to the TCPA, Defendants are liable in statutory damages for the sum of $500
and $1,500 for each fax, for a total sum in this instance of between $200 million and $3
billion.

20) On or about August 5, 2008, Defendants send the Exhibit 1 Fax to Plaintiff and the
members of the Class, Exhibit 1, in violation of TCPA.

21) The purpose of the Exhibit 1 Fax was to manipulate JYTO stock in the securities market.

22) The House Report on the Securities Exchange Act, H.R. Rep. No. 1383, 73d Cong., 2d
Sess., pp. 10, 11 (1934) gives evidence of Congress' concern regarding the manipulation of
the securities market:

> "To insure to the multitude of investors the maintenance of fair and honest
> markets, manipulative practices of all kinds on national exchanges are banned.
> The bill seeks to give investors markets where prices may be established by the
> free and honest balancing of investment demand with investment supply."
> ***
> "The idea of a free and open public market is built upon the theory that competing
> judgments of buyers and sellers as to the fair price of the security brings about a
> situation where the market price reflects as nearly as possible a just price."

23) Senate Report No. 1455, 73d Cong., 2d Sess., p. 81 (1934), similarly states:

> "The purpose of the Act is . . . to purge the securities exchanges of those practices
> which have prevented them from fulfilling their primary function of furnishing
> open markets for securities where supply and demand may freely meet at prices
> uninfluenced by manipulation or control."

24) The broadcasting of the Exhibit 1 Fax manipulated JYTO stock.

25) Joytoto and Defendants were aware of the market manipulation of the MDFI stock.

26) Defendants, their co-conspirators, aiders and abettors, caused to be transmitted the Exhibit 1 Fax in order to manipulate the JYTO stock as to both value and volume.

27) Defendants took advantage of the market manipulation.

28) Joytoto's officers, directors and insiders, who were aware of the market manipulation and those who took advantage of it, had a duty to disclose the market manipulation to the securities market.

29) Plaintiff has identified two classes of stock manipulators who benefit by the illegal stock manipulation through Unsolicited Fax broadcasts in issue here:

a) The Company whose stock is being promoted by the Exhibit 1 Fax. In the matter at hand, this class of beneficiaries consists of Joytoto; and/or

b) The insiders and or shareholders of the company whose stock is being promoted by the Exhibit 1 Fax. In the matter at hand, this class of beneficiaries consists of Joytoto's insiders, officers, directors and/or shareholders.

30) Joytoto, Joytoto's officers, directors and insiders provided advice and encouragement with respect to the transmission of the Exhibit 1 Fax.

31) Joytoto and Joytoto's officers, directors and insiders assisted and/or participated with respect to the transmission of the Exhibit 1 Fax.

32) Defendants' market manipulation scheme was not disclosed to the investors and the potential investors through a disclosure form 8-K or otherwise.

## CLASS ACTION ALLEGATIONS

33) Plaintiff realleges all allegations heretofore set forth.

–6–

34) This is a proposed class action suit brought on behalf of Plaintiff and on behalf of other persons and entities who received an unsolicited fax advertisement to their telephone facsimile machine by Defendants.

35) Plaintiff claims and alleges that Defendants' use of the telephone facsimile machine, computer, or other device to send an unsolicited facsimile advertisement to a telephone facsimile line violates the TCPA. This cause of action is specifically authorized pursuant to Arizona Revised Statutes § 44-1482(C).

36) Plaintiff brings this action in Plaintiff's individual capacity as well as on behalf of a class of persons and entities similarly situated (the "Class").

37) Plaintiff operates a business located in Phoenix, Maricopa County, State of Arizona, and receives and has received unsolicited faxes that cause it damages due to the loss of its paper and toner, the temporary loss of use of its facsimile machine and computer, the potential loss of business, and a violation of its right to privacy.

38) As a direct and proximate result of Defendants' conduct, Plaintiff and the members of the Class suffered damages due to the loss of paper and toner, the temporary loss of use of their facsimile machine and the potential loss of business while their facsimile machines were receiving the Exhibit 1 Fax.

39) This Class Action is brought and may be maintained pursuant to Rule 23, Arizona Rules of Civil Procedure. Plaintiff seeks to represent a Class comprised of:

> All persons who received an unsolicited advertisement promoting
> Joytoto USA, Inc. or JYTO stock via unsolicited facsimiles

40) This action is properly brought as a class action pursuant to Rule 23, A.R.C.P., for the following reasons:

a) The Exhibit 1 Fax states on its face that Stock Rx was paid the sum of $20,000.00 for its service of broadcasting the Exhibit 1 Fax. On information, a fax distribution firm sends out a fax at a cost of between 1 and 5 cents per fax. This means that Defendants sent out between 400,000 and 2 million Unsolicited Faxes.

b) The class is so numerous that joinder of all members is impracticable; and

c) There are questions of law or fact common to the class, to wit:

   i) Whether Defendants violate the TCPA when sending the Exhibit 1 Fax; and

   ii) Whether the facsimiles that are the same or similar to the Exhibit 1 Fax constitute "unsolicited advertisements" under TCPA; and

   iii) Whether Plaintiff and the members of the Class are entitled to damages under the TCPA; and

   iv) Whether Plaintiff and the members of the Class are entitled to treble damages under the TCPA; and

   v) Whether Plaintiff and the members of the Class are entitled to injunctive relief under the TCPA; and

   vi) Whether Plaintiff and the members of the Class are entitled to declaratory relief.

d) The claims or defenses of the representative parties are typical of the claims or defenses of the Class because all members of the Class received the same Unsolicited Fax; and

e) The named Plaintiff will fairly and adequately protect the interests of the class because:

   i) Plaintiff seeks no relief that is antagonistic to the other members of the Class; and

–8–

ii) Plaintiff has no established business relationship with any Defendant or any potential additional Defendant; and

iii) Plaintiff shall vigorously pursue the claims of the Class; and

iv) Plaintiff has retained counsel with 28 years of experience in litigation matters and competent in representing the interests of the Class; and

v) Plaintiff's counsel has expended significant efforts in this matter and is learned in tracking down the sources of Unsolicited Faxes.

f) A Rule 23 Class Action is superior to any other available means for the adjudication of this controversy in the following particulars:

i) This action will cause an orderly and expeditious administration of the Class's claims; and

ii) The economies of time, effort and expense will be fostered; and

iii) Uniformity of decisions will be ensured at the lowest costs and with the least expenditures of judicial resources.

g) Because of the size of the Class, the expense and burden of individual litigation makes it impractical for the individual members of the Class to individually seek redress for the wrongs done to them. Plaintiff believes that the members of the Class, to the extent they are aware of their rights against Defendants, would be unable to secure counsel to litigate their claims on an individual basis because of the relatively small nature of the individual damages warranted and/or the value of individual injunctive relief. Hence, a class action is the only feasible means of recovery for the members of the Class. Furthermore, without a class action, the members of the Class will continue to suffer

damages and Defendants will continue to violate federal law, retaining and reaping the proceeds of their wrongful marketing practices.

h) Plaintiff does not anticipate any difficulty in management of this action because the evidence proving Defendants' violations of the TCPA is ascertainable through discovery. The identities of the members of the Class are known to Defendants, and damages can be calculated from Defendants' records. This action poses no unusual difficulties that would impede its management by the Court as a Class action.

**COUNT ONE**
(Violation of the Telephone Consumer Protection Act)
(47 U.S.C. § 227 *et seq*)

41)Plaintiff realleges all allegations heretofore set forth.

42)Defendants violated the Telephone Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005 ("TCPA"), 47 U.S.C. § 227 *et seq.* case ("TCPA") by broadcasting the Exhibit 1 Fax to Plaintiff and the Class.

43)Defendants and/or their agents used a telephone facsimile machine, computer, or other device to send unsolicited advertisements to telephone facsimile machines to Plaintiff and the members of the Class.

44)On information and belief, in each instance Defendants transmitted or caused to be transmitted unsolicited faxes to telephone machines themselves, or had a high degree of involvement in the transmission of the unsolicited faxes to telephone facsimile machines. For example:

a) Defendants knew that the transmitted faxes were advertisements;

b) Defendants participated in the preparation of their content;

-10-

c) Defendants provided or obtained the fax telephone numbers of Plaintiff and the members of the Class;

d) Defendants and members of the Class have no established business relationship;

e) Defendants compensated a third party for transmitting the unsolicited faxes to telephone facsimile machines; and/or

f) Defendants knew that Plaintiff and the members of the Class had not authorized the faxes' transmission by prior express invitation or permission.

45) As a direct and proximate result of said conduct, Plaintiff and members of the Class have sustained damages.  Under the TCPA, Plaintiff and each member of the Class are entitled to injunctive and declaratory relief enjoining Defendant's unlawful conduct, as well as incidental statutory damages.

46) As a result of said conduct, Plaintiff and members of the Class suffered property damage, and Defendant has invaded their privacy.

### COUNT TWO
### (Declaratory Judgment)

47) Plaintiff realleges all allegations heretofore set forth.

48) This count is brought pursuant to the Arizona version of the Uniform Declaratory Judgment Act, A.R.S. § 13-1821 *et seq* and the Federal Declaratory Judgment Act 28 U.S.C. § 2201 *et seq.*

49) A justiciable controversy exists between Plaintiff and the members of the Class and Defendants regarding the legality of Defendants' unsolicited fax transmissions.

-11-

50) Defendants claim, or may claim, that their conduct in sending unsolicited fax transmissions does not violate the TCPA.

51) Defendants claim, or may claim, that they obtained express invitation or consent to send the faxes to Plaintiff and the members of the Class.

52) Defendants claim, or may claim, that they enjoyed an established business relationship with Plaintiff and the members of the Class.

53) Plaintiff claims that Defendants' practices violate the TCPA.

### COUNT THREE
(Civil Conspiracy)

54) Plaintiff realleges all allegations heretofore set forth.

55) Defendants agreed among themselves to engage in a course of conduct involving a violation of 47 U.S.C. § 227.

56) Defendants agreed to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages to named Plaintiff and the members of the Class.

57) Named Plaintiff and the members of the Class have been damaged by acts committed by Defendants pursuant to the civil conspiracy above.

58) Defendants' conduct was intentional and premeditated, intended to unjustly benefit Defendants at the expense of the named Plaintiffs and the members of the Class, entitling named Plaintiff and the members of the Class to punitive damages in an amount sufficient to deter these Defendants and others similarly situated from repeating or committing the wrongful acts complained of herein, but in no event less than $5,000,000.00 each.

### COUNT FOUR
(Aiding and Abetting)

-12-

59) Plaintiff realleges all allegations heretofore set forth.

60) Defendants aided and abetted one another as follows:

   a) The sender of the Exhibit 1 Fax committed a violation of the TCPA; and

   b) Defendants knew that the sender of the Exhibit 1 Fax violated the TCPA; and

   c) Defendants substantially assisted or encouraged the sender of the Exhibit 1 Fax in the following non-exclusive actions:

      i) They provided the information contained in the Exhibit 1 Fax; and

      ii) They provided the opportunity to the sender of the Exhibit 1 Fax to violate the TCPA; and

      iii) They sought the benefits of the Exhibit 1 Fax; and

      iv) They accepted the benefits of the Exhibit 1 Fax.

61) Named Plaintiff and the Class have been harmed by Defendants' aiding and abetting.

62) Defendants are responsible to named Plaintiff and the Class as aiders and abettors for the same amount of damages as the principal violators of the TCPA.

63) Defendants' conduct was intentional and premeditated, intended to unjustly benefit Defendants at the expense of named Plaintiff and the members of the Class, entitling named Plaintiff and the members of the Class to punitive damages in an amount sufficient to deter these Defendants and others similarly situated from repeating or committing the wrongful acts complained of herein, but in no even less than $5,000,000.00 each.

## REQUEST FOR TRIAL BY JURY

64) Plaintiff requests a trial by a jury on all issues triable by a jury.

# RELIEF SOUGHT

Plaintiff prays for relief as follows:

a) For Certification of the Class pursuant to Rule 23 of the Arizona Rules of Civil Procedure; and

b) For extraordinary, equitable, and/or injunctive relief as permitted by law to ensure that Defendants will not continue to send unsolicited faxes; and

c) For judgment in the amount of $500.00 for each member of the Class for incidental statutory damages for each individual unsolicited fax received from Defendants; and

d) For judgment in the amount equal to three times the damages to Plaintiff and each member of the Class under the TCPA, to wit, $1,500.00 for each member of the Class; and

e) For a declaration that Defendants have violated the TCPA because they failed to obtain express invitation or consent to send the subject facsimiles to Plaintiff or the Class; and

f) For a declaration that Defendants violated the TCPA because they did not enjoy an established business relationship with Plaintiff or the members of the Class; and

g) For judgment for costs and fees incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs, as provide by law; and

h) For such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 24TH day of September, 2008.

PETER STROJNIK

By:  Peter Strojnik
Attorney for the Plaintiff

-14-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**EXHIBIT 1**

FREE SUBSCRIPTION      Emerging Technology Portfolio Report      Wednesday, Aug 6, 2008

# Neo-Tech News Bulletin

### "WITH AN ARRAY OF NEW TECHNOLOGIES & LICENSES IN MULTI-BILLION-DOLLAR INDUSTRIES, JYTO IS ALREADY A WINNER!"

| | |
|---|---|
| **Joytoto USA, Inc.** | |
| **(OTCBB: JYTO)** | |
| Recent price: | $0.135 |
| Target Price: | $0.85 |
| Market Cap: | 51.03M |
| Rating: | **Strong Buy** |

*Sony*, *Vivendi Universal* and *Microsoft* are three immense companies that had investors gotten in early; they would now be quite wealthy. All three, in hindsight, were spectacular buys at one point. And all three share one other trait – all three have a significant portion of their profitable business models spent in the world of online Massively-Multiplayer Online (MMO) games as well as new technology OEM and ODM.

And just like these three industry giants, these traits exemplify the business model of **Joytoto USA, Inc. (OTCBB: JYTO)**. JYTO has an Exclusive North American Master License agreement with Joyon Entertainment Co. Joyon has already done well over $100,000,000 in the Asian Markets. So **there's no need to reinvent the wheel here!** The company has been sought out by numerous big box retailers and distributors including **Wal-Mart, Target, Circuit City and Staples.**

And you've already seen their products! They're already BEST BUY's exclusive **manufacturer of Insignia® brand products!**

What truly makes **Joytoto USA** a unique find is that while Sony, Vivendi and Microsoft risk an immense amount of capital in game and product development, that's not the case with **Joytoto USA, Inc.**

While **Joytoto Korea** bears all the development costs, overhead, manufacturing burden and inventory issues which plagues competitors in the same space, **Joytoto USA** is basically a consultant with low costs and low overhead who brings hot consumer electronics products to market OEM in a "fabless "(no factory) world. This leaves **Joytoto USA** unencumbered and cash rich to continually seek new markets and products ahead of the market, not behind it.

The online MMO gaming marketing *(seen below)* continues to grow, with recurring revenue of monthly subscribers paying between $10 and $20 every month! This is a solid, dependable business model based upon a property that's **ALREADY SUCCESSFUL!**

**Visit www.JoytotoUSA.com today!**

## WHO IS JYTO?

The company's three business segments are electronic products and components, and online games and MP3 content. The electronic products and components business is that of a virtual, original equipment manufacturer (OEM) and original design manufacturer (ODM) of consumer electronics for retailers throughout the world. Joytoto USA's online game business segment operates online games in North America through a Exclusive North American License Agreement with Joyon Entertainment Co., Ltd. These games operating in the Asian markets have generated more than $100,000,000 in the Asian markets.

## INVESTMENT HIGHLIGHTS

- Main products are MP3 Players, Consumer Electronics, Online Video Games, Content for Internet and MP3 Devices.

- Partnerships include BEST BUY, SAMSUNG and NAPSTER.

- Joytoto USA, Inc. Announces Plans to Distribute the Popular Online Video Game 'The Great Merchant' in the United States

- Joytoto USA, Inc. Announces its First Downloadable Online Game for US Distribution

- Joytoto USA, Inc. Announces distribution of 24 online games to satisfy growing US demand - $1,000,000,000+ industry.

- Joytoto USA, Inc. signs a deal to provide HyundaiRFmon kiosks through 2012. This deal with deliver more then $10,000,000 in revenue to Joytoto USA.

- Joytoto USA, Inc. has already received and completed its first U.S. Purchase Order



Total MMO Game Active Subscriptions Worldwide

Neo-Tech News is an independent marketing firm. This report contains forward-looking statements. Past performance does not guarantee future results. This report is based on Neo-Tech News independent analysis, and may, or may not be the opinion of Neo-Tech News. This report is based on JYTO's web site, press releases and also relies on information supplied by sources believed to be reliable. Neo-Tech News has been compensated 20 thousand dollars by a third party for the dissemination of this report. The information contained in this report is for informational purposes only, and should not be construed as an offer or solicitation to buy or sell securities. Investors should consult with an investment professional before investing any money. If you have received this alert in error and are not a member of Neo-Tech News's recipient list we apologize. Please call 1-866-845-2960 to have your number removed.

**EXHIBIT 2**

1   Peter Strojnik, Esq. 6464
    THE LAW FIRM OF PETER STROJNIK
2   3030 North Central Avenue, Suite 1401
3   Phoenix, Arizona 85012
    Telephone: 602-524-6602
4   Facsimile: 602-296-0135
    e-mail: *Strojnik@aol.com*
5   Website:  Strojnik.com
6   Attorney for Plaintiff

COPY

SEP 2 5 2008

MICHAEL K. JEANES, CLERK
M. BONO
DEPUTY CLERK

7        **IN THE SUPERIOR COURT IN THE STATE OF ARIZONA**

8          **IN AND FOR THE COUNTY OF MARICOPA**

9

10  CONSUMER PROTECTION               ) NO.           CV2008-023603
    CORPORATION, an Arizona           )
11  Corporation,                      )        **CERTIFICATE OF ARBITRATION**
                                      )
12                       Plaintiff,   )
13                                    )
                                      )
14          vs.                       )
                                      )
15  NEO-TECH NEWS, a fictitiously named )
    defendant whose true legal identity is not )
16  known by Plaintiff; JOYTOTO USA,  )
    INC., a Nevada Corporation; JOYON )
17  ENTERTAINMENT, INC., a Delaware   )
    Corporation; ABC DEFENDANTS 1-50, )
18                                    )
                                      )
19                       Defendants.  )

20
        The above cause is NOT subject to compulsory arbitration.
21
        RESPECTFULLY SUBMITTED this 24TH day of September, 2008.
22

23                              PETER STROJNIK

24

25                              By:  Peter Strojnik
                                Attorney for the Plaintiff

                                –1–

**EXHIBIT 3**

1   Peter Strojnik, Esq. 6464
    THE LAW FIRM OF PETER STROJNIK
2   3030 North Central Avenue, Suite 1401
3   Phoenix, Arizona 85012
    Telephone: 602-524-6602
4   Facsimile: 602-296-0135
    e-mail: *Strojnik@aol.com*
5   Website: Strojnik.com
6   Attorney for Plaintiff

7
                **IN THE SUPERIOR COURT IN THE STATE OF ARIZONA**
8
                **IN AND FOR THE COUNTY OF MARICOPA**
9
                                        CV2008-023603
10  CONSUMER PROTECTION              ) NO.
    CORPORATION, an Arizona          )
11  Corporation,                     )
                                     )           **SUMMONS**
12                      Plaintiff,   )
                                     )     **(JOYON ENTERTAINMENT, INC.)**
13                                   )
14          vs.                      )
                                     )
15  NEO-TECH NEWS, a fictitiously named    )   IF YOU WANT THE ADVICE OF A
    defendant whose true legal identity is not )  LAWYER, YOU MAY WISH TO CONTACT
16  known by Plaintiff; JOYTOTO USA,  )         THE LAWYER REFERRAL SERVICE AT
    INC., a Nevada Corporation; JOYON )            602-257-4434 OR ON-LINE AT
17  ENTERTAINMENT, INC., a Delaware  )          WWW.LAWYERFINDERS.ORG. LRS IS
    Corporation; ABC DEFENDANTS 1-50, )        SPONSORED BY THE MARICOPA
18                                   )             COUNTY BAR ASSOCIATION
19                      Defendants.  )

20
21  **TO:  JOYON ENTERTAINMENT, INC. C/o Its Statutory Agent Incorp Services, Inc.**
    One Commerce Center, 1201 Orange Street, Suite 600, Wilmington, Delaware 19899.
22

23  **YOU ARE HEREBY SUMMONED** and required to appear and defend, within the time

24  applicable, in this action in this Court.  If served within Arizona, you shall appear and defend

25  within 20 days after the service of the Summons and the Complaint upon you, exclusive of the day

                                        -1-

of service.  If served out of the State of Arizona – whether by direct mail, by registered or certified mail, or by publication – you shall appear and defend within 30 days after the service of the Summons and Complaint upon you is complete, exclusive the day of service.  When process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of process against it in this State, the insurer shall not be required to appear, answer or plead until the expiration of 40 days of such service upon the Director.  Service by registered or certified mail without the State of Arizona is complete 30 days after the date of filing the receipt and affidavit of service with the Court.  Service by publication is complete 30 days after the date of first publication.  Direct service by mail is complete when made.  Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after the Affidavit of Compliance and return receipt of Officer's Return. **RCP 4.1 and 4.2; A.R.S. §§ 20-222, 28-502, 28-503.**

**YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.  YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of the Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or Response upon plaintiffs' attorney.**

A request for reasonable accommodations for persons with disabilities must be made to the division assigned to the case by the parties at least (3) three days before the scheduled court proceeding.

The name and address of the attorney for the plaintiffs is:

> Peter Strojnik, Esq.
> 3030 North Central Avenue, Suite 1401
> Phoenix, Arizona 85012-2712

SIGNED AND SEALED this date:_____

MICHAEL K. JEANES, CLERK


_____
By: Deputy Clerk

SEP 2 5 2008

MICHAEL K. JEANES, CLERK
M. BOND
DEPUTY CLERK

-3-

**EXHIBIT 4**

1 | Peter Strojnik, Esq. 6464
THE LAW FIRM OF PETER STROJNIK
2 | 3030 North Central Avenue, Suite 1401
3 | Phoenix, Arizona 85012
Telephone: 602-524-6602
4 | Facsimile: 602-296-0135
e-mail: *Strojnik@aol.com*
5 | Website: Strojnik.com
6 | Attorney for Plaintiff

7

8 | ## IN THE SUPERIOR COURT IN THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA
9

10 | CONSUMER PROTECTION      ) NO.      CV2008-023603
CORPORATION, an Arizona
11 | Corporation,
     **SUMMONS**
12 |
     Plaintiff, )      **(JOYTOTO USA, INC.)**
13 |
vs.
14 |      IF YOU WANT THE ADVICE OF A
LAWYER, YOU MAY WISH TO CONTACT
THE LAWYER REFERRAL SERVICE AT
15 | NEO-TECH NEWS, a fictitiously named      602-257-4434 OR ON-LINE AT
defendant whose true legal identity is not      WWW.LAWYERFINDERS.ORG, LFG IS
16 | known by Plaintiff; JOYTOTO USA,      SPONSORED BY THE MARICOPA
INC., a Nevada Corporation; JOYON      COUNTY BAR ASSOCIATION.
17 | ENTERTAINMENT, INC., a Delaware
Corporation; ABC DEFENDANTS 1-50,
18 |
19 |      Defendants. )

20

21 | **TO: JOYTOTO USA, INC.** C/o Its Statutory Agent Budget Corp 2050 Russett Way,
Carson City, Nevada 89703.
22

23 | **YOU ARE HEREBY SUMMONED** and required to appear and defend, within the time
24 | applicable, in this action in this Court. If served within Arizona, you shall appear and defend
25 | within 20 days after the service of the Summons and the Complaint upon you, exclusive of the day

-1-

of service. If served out of the State of Arizona – whether by direct mail, by registered or certified mail, or by publication – you shall appear and defend within 30 days after the service of the Summons and Complaint upon you is complete, exclusive the day of service. When process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of process against it in this State, the insurer shall not be required to appear, answer or plead until the expiration of 40 days of such service upon the Director. Service by registered or certified mail without the State of Arizona is complete 30 days after the date of filing the receipt and affidavit of service with the Court. Service by publication is complete 30 days after the date of first publication. Direct service by mail is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after the Affidavit of Compliance and return receipt of Officer's Return. **RCP 4.1 and 4.2; A.R.S. §§ 20-222, 28-502, 28-503.**

**YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint. YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of the Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or Response upon plaintiffs' attorney.**

A request for reasonable accommodations for persons with disabilities must be made to the division assigned to the case by the parties at least (3) three days before the scheduled court proceeding.

The name and address of the attorney for the plaintiffs is:

Peter Strojnik, Esq.
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012-2712

-2-

SIGNED AND SEALED this date:_____

MICHAEL K. JEANES, CLERK

_____COPY_____
By: Deputy Clerk
                    SEP 2 5 2008

MICHAEL K. JEANES, CLERK
M. BONG
DEPUTY CLERK

--3--